**HOWARD W. HECK, AND ASSOCIATES, INC.,**
Plaintiff–Appellant,

v.

**The UNITED STATES, Defendant–**
Appellee.

No. 97–5064.

United States Court of Appeals,
Federal Circuit.

Jan. 23, 1998.

---

**13.** We note that *Morrison* was decided after the costs award in this case was calculated.

Kevin J. Coakley, Connell, Foley & Geiser LLP, of Roseland, New Jersey, argued for plaintiff-appellant. With him on the brief was Tricia Bevelock O'Reilly.

Thomas L. Halkowski, Attorney, Environment & Natural Resources Division, U.S. Department of Justice, of Washington, D.C., argued for defendant-appellee. With him on the brief were Lois J. Schiffer, Assistant Attorney General, and Martin W. Matzen, Attorney. Of counsel on the brief was Barry E. Gale, Attorney, U.S. Army Corps of Engineers, Philadelphia District, of Philadelphia, Pennsylvania.

Before MAYER, Chief Judge,* RICH and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Howard W. Heck, and Associates, Inc. ("Heck") appeals the judgment of the Court of Federal Claims, 37 Fed.Cl. 245 (1997), dismissing its complaint and holding that the court lacked jurisdiction over Heck's Fifth Amendment taking claim [1] because the claim was not ripe for adjudication. Because the Army Corps of Engineers ("Corps") made no decision on the merits of Heck's application for a wetlands dredge-and-fill permit but removed the application from active con-

---

* Chief Judge Haldane Robert Mayer assumed the position of Chief Judge on December 25, 1997.

1. "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4.

sideration due to Heck's unexcused failure to submit the statutorily-required state water quality certificate ("WQC") to support its federal permit application, we affirm.

## BACKGROUND

In order to expand Heck's existing residential development in Farmingdale, New Jersey, Heck applied to the Corps for a Clean Water Act ("CWA") section 404 permit[2] on April 5, 1991, to discharge, dredge, and fill 13 acres of wetlands within Heck's 24 acre parcel of property. A WQC from the State of New Jersey, or a waiver by the Corps of such, was a statutory prerequisite for the Corps to issue a section 404 permit. *See* 33 U.S.C. § 1341 (1994); 33 C.F.R. § 325.2(b)(1)(ii) (1996).

Heck had submitted a WQC application to the New Jersey Department of Environmental Protection ("NJDEP") on January 3, 1989. On February 16, 1989, the NJDEP responded by letter to Heck requesting, among other things, submission of a complete discussion of alternatives (an "alternatives analysis") for the proposed project.[3] Heck responded that

> the property could not physically be developed without removal of vegetation, grading and fill for proper drainage purposes. Accordingly, there is no other alternative to the approved residential project, other than to allow the land to remain idle and vacant.

37 Fed.Cl. at 247. In December 1989, the NJDEP again notified Heck that its alternatives analysis was still incomplete and specified that

> [a]lternatives are to include both on and off-site considerations. On-site alternatives would include minimizing water quality impact through the minimization of discharge and fill, and/or total avoidance of wetland impact. The consideration of off-site alternatives must also be demonstrat-

ed. The Division does not consider ownership of a particular property as reason to reject alternative sites. A complete alternatives analysis must be submitted prior to further review of this application.

*Id.*

At that point, a disagreement ensued which continued over a three year period between Heck and the NJDEP about the legal basis upon which the NJDEP could require this alternatives analysis. Heck also argued to the NJDEP that because its application had been filed over a year previously, the WQC requirement should be presumed waived. Heck's argument was based on section 401 of the CWA which presumes waiver for purposes of a federal application when a state does not act upon a WQC application within one year. *See* 33 U.S.C. § 1341(a)(1). On December 16, 1992, however, having not received an alternatives analysis from Heck in over three years, the NJDEP canceled Heck's WQC application.

While trying to secure a WQC from the State of New Jersey, Heck proceeded with the section 404 permit process before the Corps. During the process, the Corps requested and Heck provided additional information, and in October 1992, the Corps notified Heck that the application had been sent out for public notice and reminded Heck of its responsibility to obtain state approval and a WQC from the NJDEP. In response to the public notice, the Corps received comments from the Environmental Protection Agency ("EPA") and the Department of the Interior ("DOI"), both of whom expressed the opinion that Heck's proposed development would violate the CWA.

In November 1992, Heck argued to the Corps that, because NJDEP had failed to act upon its application within one year, the Corps should deem the requirement of a WQC waived by the State of New Jersey. However, because the NJDEP timely reviewed but ultimately canceled Heck's WQC

---

**2.** Section 404(b)(1) provides that permits shall be granted for discharge into navigable waters (including wetlands) "based upon criteria comparable" to those criteria used for granting permits to dispose of material into territorial seas, the contiguous zone, and the ocean. 33 U.S.C. § 1344(b)(1).

**3.** When evaluating a WQC application, the NJDEP incorporates the logic of the CWA alternatives analysis in section 404(b)(1), which is also a requirement when applying to the Corps for a section 404 permit.

application, the Corps notified Heck by letter dated January 8, 1993 that the Corps could not waive the requirement of a state WQC[4] and that Heck's section 404 application was being withdrawn from active status until Heck submitted the WQC. The Corps removed the application from active status without prejudice on December 16, 1993.

Instead of re-filing a permit application with the Corps, however, Heck filed a Fifth Amendment taking claim in the Court of Federal Claims. The court, in granting the government's motion to dismiss for lack of jurisdiction, held that Heck's claim was not ripe for adjudication. *See Heck,* 37 Fed.Cl. at 246. The court found that Heck's claim was not ripe because the Corps never issued a final decision on the merits but instead removed Heck's application from active status for failure to include a state WQC. *Id.* at 250. The court also held that neither the negative comments from the EPA and the DOI nor the requirement of an alternatives analysis rendered the section 404 permit process futile as to Heck within the meaning of the case law because the Corps has issued permits to other applicants despite similar allegedly insurmountable obstacles. *See id.* at 252.

Furthermore, the court stated that it was the wrong forum to address Heck's challenges under the Administrative Procedure Act to either the NJDEP's decision requiring the alternatives analysis or to the Corps' decision not to waive the WQC requirement. *See id.* at 255. This timely appeal followed.

## DISCUSSION

### I.

█ We review *de novo* whether the Court of Federal Claims possessed jurisdiction. *Wheeler v. United States,* 11 F.3d 156, 158 (Fed.Cir.1993). The Supreme Court specifically has held that taking claims arising from the application of government regulations are not ripe until the government entity charged

with implementing the regulations has reached a final decision applying the regulations to the property at issue. *See Mac-Donald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986) ("[A]ppellant still has yet to receive the Board's 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.'" (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 191, 105 S.Ct. 3108, 3118–19, 87 L.Ed.2d 126 (1985))); *see also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 127, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985) ("Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred."). Accordingly, the dispositive question before us in this appeal is whether the Corps' withdrawal of Heck's section 404 permit application from active status for failure to complete the application by including the statutorily-required state WQC constitutes a merits decision by the Corps. We hold it does not.

### II.

**A. State Certification Is a Prerequisite For a Final Decision by the Corps and Hence for Judicial Review**

█ The CWA specifically makes submission by the applicant of certification by the state in which the discharge will originate a prerequisite for issuance by the Corps of a section 404 permit. 33 U.S.C. § 1341 (1994). The reason, as the legislative history indicates, is to maintain the particular state's water quality standard which may be higher than that established federally by the CWA. S.Rep. No. 92–414, at 69 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3735. Should the state refuse to give its approval, the provisions of 33 C.F.R. § 320.4(j) grant the Corps discretion to deny the permit without prejudice. Here, however, the State of New Jer-

---

4. The Corps may waive the required state WQC if the state has not acted on the WQC application within one year of receiving a valid request for certification. *See* 33 C.F.R. § 325.2(b)(1)(ii) (1996). Despite Heck's arguments, the state and not the Corps has the responsibility to determine

if it has received a valid request. 51 Fed.Reg. 41,206, 41,211 (1986). According to the NJDEP, Heck never submitted a valid request for a WQC because Heck failed to provide the state with the mandatory alternatives analysis.

sey did not refuse to give its approval; it canceled the application as incomplete. Similarly, the Corps did not deny the permit. Rather, because Heck failed to obtain a WQC from the State of New Jersey, the Corps removed Heck's application from active status and without prejudice for incompleteness. Nor did the Corps issue a merits-based determination here regarding the proposed development's effect on water quality standards because Heck had not provided the Corps with the information required by law. We therefore hold that the dismissal of the application as incomplete was not a final decision or a decision on the merits.[5]

■ Heck, however, argues that the NJDEP's cancellation of its WQC application constitutes a final decision by the Corps. In order for this argument to succeed, Heck must prove both that (1) the NJDEP made a decision on the merits that denied Heck "economically viable" use of its land, and (2) this state action constitutes a federal taking.

As Heck utterly fails to prove the first requirement, we do not decide the second. The NJDEP canceled Heck's WQC application solely because Heck refused to submit an alternatives analysis, a fact that is indisputable. The NJDEP issued no final determination directly affecting the property but only canceled the application as incomplete, allowing the opportunity to refile. *Cf. Mac-Donald,* 477 U.S. at 351, 106 S.Ct. at 2567 ("Our cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the Constitutionality of the regulations that propose to limit it."). Because there was no final determination, Heck still had, and still has, full opportunity to seek a WQC upon submission of an alternatives analysis. Heck concedes, however, that it still has not done so. Because the NJDEP did not determine whether Heck would receive a WQC, its actions in withdrawing Heck's application for failure to submit all of the required parts cannot be viewed as a decision on the merits. Therefore, the state action of canceling Heck's incomplete WQC application does not consti-

tute a final decision, even assuming it can be imputed to the federal government, and hence it cannot itself support a Fifth Amendment taking claim.

## B. Heck's Other Arguments Are Without Merit

■ We have considered Heck's remaining arguments and find that they lack merit. Heck alleges that the mere requirement of an alternatives analysis makes the application process futile because were Heck to submit an alternatives analysis the WQC surely would be denied. However, the futility exception simply serves "to protect property owners from being required to submit *multiple* applications when the manner in which the first application *was rejected* makes it clear that no project will be approved." *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 504 (9th Cir. 1990) (emphasis added). In this case, by contrast, Heck's first application was never rejected because it was never complete. Furthermore, the Court of Federal Claims properly disposed of Heck's "futility" argument as lacking any factual foundation because of testimony that the Corps has previously granted permits despite the allegedly insurmountable obstacles of negative agency comments and of the requirement for an alternatives analysis.

Nor did Heck show undue delay by the State of New Jersey. In fact, the delay of three years was nearly all attributable to Heck itself.

Heck's "hardship" argument also is without merit because any "hardship" experienced due to lack of a final decision is entirely the fault of Heck itself. Heck could have completed a valid WQC application with the NJDEP, but it unilaterally refused and still has not done so.

■ To the extent that Heck alleges that the NJDEP violated state law in demanding an alternatives analysis, the appropriate forum would be the New Jersey state courts.[6]

---

**5.** Heck's reliance on *Ciampetti v. United States,* 18 Cl.Ct. 548 (1989), for its position that the Corps made a final decision is misplaced, and *Ciampetti* is not binding on this court.

**6.** Heck failed to challenge the construction of the statute by the NJDEP in New Jersey state court, and Heck's reliance on *New Jersey Chapter of the National Association of Industrial and Office*

Without a contrary determination by a New Jersey state court, this court must presume that the NJDEP authorities acted lawfully when they canceled Heck's WQC application for failing to submit the required alternatives analysis.

For the above reasons, the judgment of the Court of Federal Claims is

*AFFIRMED.*

*Parks v. New Jersey Department of Environmental Protection,* 241 N.J.Super. 145, 574 A.2d 514 (App.Div.1990), *certif. denied,* 122 N.J. 374, 585 A.2d 379, 380 (1990), in support of its proposition would require us to interpret the state court's construction of a state statute, which we decline to do.